## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | | |
|---|---|---|
| BRANDI HUBBARD, SHERLYN HUFFMAN, REBECCA BEAVER, and HOLLY JIMENEZ, Individually, and on behalf of themselves and other similarly situated current and former employees, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. 1:17-cv-1133-STA-egb |
| | ) | |
| DOLGENCORP, LLC; DOLLAR GENERAL CORP.; and DG RETAIL, LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART, DENYING IN PART MOTION TO COMPEL ARBITRATION
## ORDER DISMISSING CLAIMS WITHOUT PREJUDICE

Before the Court is Defendants Dolgencorp, LLC; Dollar General Corp.; and DG Retail, LLC (collectively "Dollar General")'s Motion to Compel Arbitration (ECF No. 38) filed on July 14, 2017. Dollar General argues that in the course of their employment with Dollar General, Plaintiffs Brandi Hubbard, Sherlyn Huffman, Rebecca Beaver, and Holly Jimenez signed arbitration agreements, in which each agreed to submit any claim she might have against Dollar General to arbitration and proceed individually. Plaintiffs have responded in opposition, arguing that the Sixth Circuit's recent decision in *National Labor Relations Board v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir. 2017) renders the arbitration agreement and its class/collective action waiver unenforceable. Dollar General has filed reply as well as

supplemental authority in support of the request to compel arbitration. For the reasons set forth below, the Motion to Compel Arbitration is **GRANTED in part, DENIED in part**.

## BACKGROUND

On April 26, 2017, Plaintiffs Brandi Hubbard, Sherlyn Huffman, Rebecca Beaver, and Holly Jimenez filed this collective action for relief under the Fair Labor Standards Act ("the FLSA"), 29 U.S.C. §§ 201 *et seq.*, and class action relief under state law.[1] The Complaint alleges that Dollar General misclassified assistant store managers and lead sales associates at all of its stores nationwide and forced these employees to work off-the-clock and thereby failed to pay the employees the overtime which they were owed. Plaintiffs initially filed their Complaint in the United States District Court for the Central District of Illinois, and that Court transferred the case on a consent motion of the parties to this District on July 6, 2017. To date, approximately 44 plaintiffs have filed opt-in forms giving their consent to join in the collective action.

In the Motion to Compel, Dollar General argues that the Court should enforce an arbitration agreement signed by three of the four named Plaintiffs as well as by all of the opt-in plaintiffs who worked for Dollar General in Tennessee. According to Dollar General, each employee and Dollar General mutually agreed to submit any claim related to the employee's employment with Dollar General to binding arbitration. Not only did each employee consent to arbitration, but each employee also agreed not to pursue any claim in arbitration as part of a class or collective action. Dollar General emphasizes the voluntary nature of the agreement and the

---

[1] Hubbard and Huffman, who are residents of Illinois and worked at Dollar General locations in Illinois, allege claims on behalf of themselves and a class of similarly situated employees under the Illinois Minimum Wage Law and the Illinois Wage Payment and Collection Act. Compl. ¶ 2. Beaver and Jimenez, who are residents of Tennessee and worked at Dollar General locations in Tennessee, allege on behalf of themselves and a class of similarly situated employees claims of unjust enrichment and breach of contract under Tennessee law. *Id.* ¶ 3.

fact that employees were permitted to consult an attorney before signing the agreement and opt out of the agreement entirely, if they notified Dollar General of their decision to opt out within 30 days of receiving the agreement.  Dollar General further argues that the opt-out provision expressly stated that Dollar General would not retaliate against any employee who exercised the right to opt out of arbitration.  Dollar General now contends that by agreeing to arbitrate any claim broadly related to their employment with Dollar General and by specifically agreeing to arbitrate any wage and hour claim, Plaintiffs' causes of action in this suit fall within the purview of the arbitration agreement.  Therefore, the Court should compel Plaintiffs to take their claims to arbitration and resolve them on an individual basis.

Dollar General makes a number of arguments about why the arbitration agreement is binding and enforceable.  However, the real dispute is whether the Sixth Circuit's recent holding in *National Labor Relations Board v. Alternative Entertainment, Inc.*, 858 F.3d 393 (6th Cir. 2017) applies in this case.  The Court analyzes the scope of the Sixth Circuit's holding more fully below.  Dollar General argues that the Sixth Circuit's opinion should be narrowly construed to stand for the proposition that mandatory arbitration agreements containing class waivers violate the National Labor Relations Act ("NLRA") and therefore are unenforceable.  Dollar General posits that the arbitration agreement in this case is distinguishable because the agreement was not a mandatory condition of Plaintiffs' employment with Dollar General.

Plaintiffs have responded in opposition to the Motion to Compel Arbitration.  Plaintiffs do not actually challenge Dollar General's arguments that the FLSA and state law claims alleged in this action are subject to the arbitration agreement each Plaintiff had with Dollar General.[2]

---

[2] Plaintiffs remark in a footnote to their memorandum that they reserve their right to raise additional defenses to the enforceability of the arbitration agreement, should the United States Supreme Court reverse the decision of the Sixth Circuit. The Court notes Plaintiffs' reservation

Plaintiffs simply argue that the Sixth Circuit's decision in *Alternative Entertainment* renders the Dollar General arbitration agreement unenforceable in its entirety.  Plaintiffs' argument tracks the reasoning of the Court of Appeals in *Alternative Entertainment*: the arbitration agreement's class/collective action waiver violates Plaintiffs' rights under the NLRA and thwarts their ability to pursue "concerted activities for the purpose of collective bargaining or other mutual aid or protection."  Pls.' Resp. in Opp'n 3 (quoting NLRA § 7, 29 U.S.C. § 157).  The Dollar General arbitration agreement violates Plaintiffs' rights to pursue collective action, either in a judicial forum or in arbitration.  And with respect to Dollar General's claim that the arbitration agreement was not mandatory, Plaintiffs respond that the class/collective action waiver, even if optional, had the effect of frustrating the employee's rights under the NLRA.  Plaintiffs argue then that the Court should deny the Motion to Compel Arbitration.

Dollar General has filed a reply brief as well as supplemental authority addressing the Sixth Circuit's decision in *Alternative Entertainment*.  Dollar General restates its argument that the Sixth Circuit's holding does not apply in this case because the Dollar General arbitration agreement was voluntary and not mandatory.  Dollar General cites two recent opinions from the United States District Court for the Middle District of Tennessee, interpreting *Alternative Entertainment* and holding that the decision does not preclude enforcement of a collective action waiver in a valid arbitration agreement.

---

of the additional defenses for the record.  The Supreme Court has granted certiorari in three other cases presenting the same issue on the enforceability of class/collective action waivers in employee arbitration agreements.  However, no party has requested a stay of this case pending the Supreme Court's ruling, and Dollar General's Motion to Compel is otherwise ripe for determination.  Therefore, the Court will proceed to decide the issue, as the parties have framed it in their briefs.

## **STANDARD OF REVIEW**

The Federal Arbitration Act ("the FAA") was enacted with the purpose "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements on the same footing as other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *see also Rosenberg v. BlueCross BlueShield of Tenn., Inc.*, 219 S.W.3d. 892 (Tenn. 2006). When a party files a motion invoking an arbitration agreement, the Court "must follow the procedure set forth in section 4 of the FAA."  *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). Section 4 of the FAA provides as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed . . . .  [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration . . . .

 9 U.S.C. § 4; *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). If the parties to a civil action have a valid arbitration agreement, the Court should compel arbitration and stay the proceedings pending the outcome of the arbitration.  *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citing 9 U.S.C. § 2).

The Court conducts a four-step analysis of the arbitration agreement.  *See Fazio*, 340 F.3d at 392 (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).  First, the Court must determine whether the parties have agreed to arbitrate.  *Id.*  Second, the Court construes the scope of the agreement.  *Id.*  Third, where federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable.  *Id.*  Finally, if the Court

concludes that some, but not all, of the claims are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.  *Id.*

## ANALYSIS

The issue presented is whether the Sixth Circuit's holding in *Alternative Entertainment* applies under the facts of this case and renders the class/collective action waiver in the arbitration agreement between Dollar General and its employees unenforceable.  As an initial matter, the Court finds no evidence that named Plaintiff Brandi Hubbard ever signed an arbitration agreement with Dollar General.  Dollar General acknowledges this fact in its opening brief where it asserts that Beaver, Jimenez and Huffman signed the agreement but then states in a footnote that "Plaintiff Brandi Hubbard was employed prior to Dollar General's rollout of the Agreement in August 2014."  Dollar General has not submitted any evidence showing that Hubbard agreed to arbitrate at all.  Arbitration is in the final analysis "a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).  Therefore, the Court finds no reason to compel Hubbard to submit her claims to arbitration.

As for the other named Plaintiffs, the Court holds that their claims are subject to arbitration.  Dollar General has shown, and Plaintiffs have not disputed the showing, that Beaver, Huffman, and Jimenez each signed an arbitration agreement, agreeing to submit specific claims to arbitration.  The reach of the Dollar General arbitration agreement is broad.  The agreement defines the scope of "Covered Claims" as "any legal claims or disputes [the employee] may have against Dollar General, its parent and subsidiary corporations, employees, officers and directors arising out of your employment with Dollar General or the termination of your employment with Dollar General . . . ."  Arbitration Agr., ex. A-3 to Defs.'s Mot. to Compel (ECF No. 38-5).  The

agreement goes on to set forth a non-exhaustive list of "Covered Claims" and defines the term to include "claims alleging violations of wage and hour laws," "tort claims," and "claims alleging violation of any other state or federal laws." *Id.* The Court holds that the arbitration agreement defines a scope of "Covered Claims," which easily includes the claims alleged by the named Plaintiffs under the FLSA and the law of Tennessee and Illinois. Therefore, the causes of action brought by Beaver, Huffman, and Jimenez fall within the scope of claims described in the agreement and are subject to arbitration.

Having determined that the parties agreed to arbitrate and that the claims alleged in this suit fall within the scope of their agreement, the Court now turns to the real question presented, which is whether the class/collective action waiver found in the agreement is enforceable. The Dollar General agreement contains the following provision:

> "You and Dollar General may not assert any class action, collective action, or representative action claims in any arbitration pursuant to this Agreement or in any other forum. You and Dollar General may bring individual claims or multi-plaintiff claims joining together not more than three plaintiffs [and only under certain conditions which are not at issue here], provided that the claims are not asserted as class, collective or representative action." *Id.*

Notably, the agreement specifies that the class/collective action waiver does not apply to claims under the NLRA. *Id.* The Sixth Circuit recently held in *Alternative Entertainment* that "an arbitration provision requiring employees covered by the NLRA individually to arbitrate all employment-related claims is not enforceable," explaining that provisions of this kind "violate[] the NLRA's guarantee of the right to collective action . . . ." *N.L.R.B. v. Alt. Entm't, Inc.*, 858 F.3d 393, 408 (6th Cir. 2017).

In *Alternative Entertainment*, the National Labor Relations Board sought enforcement of its administrative decision that Alternative Entertainment, Inc. had violated the NLRA by

requiring its employees to agree to arbitrate all claims concerning or arising out of their employment individually.  The NLRB had found that the arbitration agreement at issue foreclosed any kind of collective or class action in any forum, whether in court or in arbitration. *Alternative Entertainment* gave the Sixth Circuit an opportunity to weigh in on a circuit split over the question of "[w]hether federal law permits employers to require individual arbitration of employees' employment-related claims."  *Id.* at 401.  The Ninth and Seventh Circuits had concluded that arbitration agreements requiring individual arbitration violated the NLRA. *Morris v. Ernst & Young, LLP*, 834 F.3d 975, 985-86 (9th Cir. 2016), *cert. granted* 137 S. Ct. 809 (2017); *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147, 1160 (7th Cir. 2016), *cert. granted* 137 S. Ct. 809 (2017).  The Fifth and Eight Circuits had reached the opposite result and concluded that such agreements did not violate the NLRA.  *Murphy Oil USA, Inc. v. N.L.R.B.*, 808 F.3d 1013, 1018 (5th Cir. 2015), cert. granted 137 S. Ct. 809 (2017) (reaffirming *D.R. Horton, Inc. v. N.L.R.B.*, 737 F.3d 444 (5th Cir. 2013)); *Cellular Sales of Mo., LLC v. N.L.R.B.*, 824 F.3d 772, 776 (8th Cir. 2016) (reaffirming *Owen v. Bristol Care, Inc.*, 702 F.3d 1050 (8th Cir. 2013)).  The Supreme Court has accepted certiorari in *Morris*, *Lewis*, and *Murphy Oil* and will resolve this split of authority during the current term.

In arriving at its conclusion, the Sixth Circuit specifically rejected the Fifth Circuit's reasoning in *Murphy Oil*.  The Sixth Circuit first found no conflict in the FAA's general policy in favor of enforcing arbitration agreements and the NLRA's right to collective action.  The FAA required the enforcement of arbitration agreements except where some other "grounds exist at law or in equity for the revocation of any contract," a provision known as the FAA's savings clause.  *Alt. Entm't*, 858 F.3d at 400 (citing 9 U.S.C. § 2).  Section 7 of the NLRA's guarantee of the right to concerted activity, including the right to bring collective or class action suits, renders

a contract containing a prohibition on class/collective actions "illegal on generally applicable grounds" and therefore unenforceable under the FAA's savings clause. *Id.* at 403. The Court of Appeals further held that section 7's right of concerted action was a substantive right under the NLRA and, as a secondary holding, that even if the statute itself did not make the right to concerted action a substantive right, the NLRB's reading of the statute to find a substantive right to concerted action in the NLRA was not unreasonable and was therefore entitled to *Chevron* deference. *Id.* at 404-405. And the Sixth Circuit found a line of Supreme Court precedent permitting class/collective action waivers in arbitration agreements outside of the employment context to be distinguishable. The Sixth Circuit concluded then that "[m]andatory arbitration provisions that permit only individual arbitration of employment-related claims are illegal pursuant to the NLRA and unenforceable pursuant to the FAA's saving clause." *Id.* at 405, 408.

For the reasons stated in *Alternative Entertainment*, the Dollar General arbitration agreement's class/collective action waiver is unenforceable. Courts "apply[ ] general state-law principles of contract interpretation to the interpretation of an arbitration agreement." *Samaan v. Gen. Dynamics Land Sys., Inc.*, 835 F.3d 593, 601 (6th Cir. 2016) (citation omitted). Likewise, courts generally apply state contract law to decide whether an arbitration agreement is enforceable. *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 195 (6th Cir. 2016). Because the named Plaintiffs worked for Dollar General in Tennessee and Illinois, the arbitration agreement in this case implicates the law of Tennessee and Illinois, depending on where each Plaintiff entered into the agreement with Dollar General. In *Alternative Entertainment*, the Court of Appeals did not indicate which state's contract law applied in that case and did not identify which specific doctrine of state contract law rendered the class/collective action waiver unenforceable. The clear implication from the Sixth Circuit's holding, however, is that class-

collective action waivers are void as against public policy insofar as waivers of this kind violate a federal statute. *Alt. Entm't*, 858 F.3d at 405 ("Mandatory arbitration provisions that permit only individual arbitration of employment-related claims are *illegal pursuant to the NLRA* and unenforceable pursuant to the FAA's saving clause.") (emphasis added); at 407 ("Arbitration provisions that are *illegal under the explicit and generally applicable terms of a federal statute . . . trigger the FAA's saving clause.") (emphasis added).

Under Tennessee law, a contract prohibited by statute is void as against public policy. *Baugh v. Novak*, 340 S.W.3d 372, 385 (Tenn. 2011) ("Tennessee courts have long recognized that, as a general rule, a contract explicitly prohibited by statute is unenforceable."). Likewise, under Illinois law, a contract contrary to statute or court decision violates public policy and is invalid. *Am. Access Cas. Co. v. Reyes*, 1 N.E.3d 524, 527 (Ill. 2013) ("A contractual provision will not be invalidated on public policy grounds unless it is clearly contrary to what the constitution, the statutes, or the decisions of the courts have declared to be the public policy or unless it is manifestly injurious to the public welfare.").

The Court holds that the class/collective action waiver between Plaintiffs and Dollar General is void as against public policy and therefore unenforceable. The Court construes the agreement to limit each named Plaintiff's ability to pursue class or collective relief in any forum, both in arbitration and in a court of law. This includes the named Plaintiffs' collective action under the FLSA and their state law claims for relief on behalf of a class of other similarly situated employees under Rule 23 of the Federal Rules of Civil Procedure. While the waiver does permit multi-plaintiff claims (limited to a maximum of three plaintiffs and only under specific conditions), the waiver precludes all other "concerted action" among signatories to the agreement, whether as a class action, a collective action, or a representative action. Perhaps

10

more importantly, the waiver is broadly worded to prohibit concerted actions of these kinds in arbitration "or in any other forum." A "forum" is commonly understood to mean "a court or other judicial body." *Black's Law Dictionary* (10th ed. 2014). This final phrase, properly construed, includes judicial actions for collective or class relief like the case at bar. In sum, the Dollar General employees who signed the agreement agreed to bargain away their right to class or collective action of any kind, in both arbitration and judicial proceedings, in abrogation of their right to concerted action under the NLRA. This is precisely the kind of waiver the Sixth Circuit has now held to be a violation of the NLRA and unenforceable under the FAA. The Dollar General agreement's class/collective action waiver is, therefore, a bargain the Court cannot enforce.

This does not end the Court's analysis of the arbitrability of Plaintiffs' collective and class claims. Even though the class/collective action waiver is unenforceable, the fact remains that Beaver, Huffman, and Jimenez agreed to arbitrate the causes of action they now allege in their Complaint. The next issue for the Court then is whether the Dollar General arbitration agreement is severable. Returning again to state contract law, the Court "must give effect to portions of the contract that may be enforced and invalidate only those portions of the contract that are unenforceable" so long as "the provisions of a contract are legally severable." *Baugh*, 340 S.W.3d at 384 (citations omitted). Under Tennessee law, "[a]n agreement can be either an entire contract or a severable contract according to the intention of the parties, and the fact that divisible parts are included within the same document does not preclude them from being considered and enforced as separate contracts." *Taylor v. Butler*, 142 S.W.3d 277, 287 (Tenn. 2004) (quoting *Penske Truck Leasing Co. v. Huddleston*, 795 S.W.2d 669, 671 (Tenn.1990)). The Illinois Supreme Court has specifically held that an unenforceable class action waiver was

11

severable from an arbitration agreement based on the agreement's severability clause and "the strong public policy in favor of enforcing arbitration agreements." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 277–78 (Ill. 2006); *see also Simons*, 288 F.3d at 890–91 (applying Michigan law and holding that an arbitration agreement is enforceable and severable based on its severability clause and "the general proposition that doubts as to the parties' intentions should be resolved in favor of arbitration").

The Court concludes that the Dollar General arbitration agreement is severable. First and foremost, the parties agreed that the agreement was severable. The Dollar General agreement contains the following clause: "If any parts of this Agreement are found to be invalid, illegal, or unenforceable, the validity, legality, and/or enforceability of the remaining provisions will not be affected by that decision, and any invalid, illegal or unenforceable provisions shall be modified or stricken." Arbitration Agr. 3, ex. A-3 to Defs.'s Mot. to Compel. The presence of a severability clause in the agreement clearly indicates that the parties intended to submit any dispute to arbitration, even if some portion of the agreement was somehow unenforceable.[3] Rather than allow an unenforceable provision to defeat their agreement to arbitrate, the parties consented to modify or strike any unenforceable provision from the agreement and agreed that the severance of such a provision would have no effect on the rest of their agreement. The Court finds that the class/collective action waiver is legally severable from the rest of the agreement without doing violence to the other terms of the agreement to arbitrate. Taken together with the strong policy under federal law in favor of arbitration, the Court concludes that the Dollar General agreement is severable.

---

[3] There is no indication from the Sixth Circuit's opinion in *Alternative Entertainment* that the agreement in that case contained a severability clause, and the Court of Appeals never addressed whether the arbitration agreement containing the class/collective action waiver in that case was severable.

Having determined that the unenforceable class/collective action waiver is severable from the rest of the Dollar General arbitration agreement, the Court holds that Beaver, Huffman, and Jimenez are bound to proceed to arbitration but may do so collectively and as a class. The agreement does not specifically allow Plaintiffs to pursue arbitration collectively or as a class. *See Huffman v. Hilltop Cos.*, 747 F.3d 391, 398-99 (6th Cir. 2014) (holding that where an "arbitration clause does not authorize classwide arbitration . . . that the plaintiffs must proceed individually" where "the parties' arbitration clause nowhere mentions classwide arbitration"). But unlike the agreement in *Huffman*, the Dollar General arbitration agreement as drafted specifically addressed class or collective arbitration of claims, making *Huffman* distinguishable. Furthermore, allowing the named Plaintiffs to proceed to arbitration collectively and as a class is consistent with their right to pursue concerted activity under the NLRA and the Sixth Circuit's holding in *Alternative Entertainment*. At the same time, compelling arbitration honors the parties' agreement to arbitrate claims related to the named Plaintiffs' employment with Dollar General. Therefore, the Court concludes that named Plaintiffs may pursue the arbitration of their FLSA claims as a collective action and their state law claims as a class action.

Plaintiffs argue that the Court should find the entire Dollar General arbitration agreement unenforceable and allow the case to proceed in this forum. However, Plaintiffs have not shown why the entire agreement is unenforceable or why the Court cannot sever the unenforceable class/collective action waiver and give effect to the rest of the agreement. Plaintiffs ignore the fact that the agreement contains a severability clause. Nothing in the Sixth Circuit's reasoning in *Alternative Entertainment* requires that the Court find the entire arbitration agreement invalid. And the Court of Appeals repeatedly observed that the problem with the class/collective action

waiver was not that it compelled employees to take their disputes to arbitration but that it deprived them of their right under the NLRA to engage in concerted action in any forum.

• "The NLRA prohibits mandatory arbitration provisions barring collective or class action suits because they interfere with employees' right to engage in concerted activity, not because they mandate arbitration." *Alt. Entm't*, 858 F.3d at 403;

• "[E]mployers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in all forums, arbitral and judicial." *Id.* (citation omitted);

• "The problem with the AEI agreement is not that it mandates arbitration or that it prohibits collective arbitration; it is that it prohibits concerted legal action in *any* forum." *Id.* at 406 (emphasis in original).

• "The arbitration provision at issue in this case 'would face the same NLRA troubles if [the employer] required its employees to use only courts, or only rolls of the dice or tarot cards, to resolve workplace disputes—so long as the exclusive forum provision is coupled with a restriction on concerted activity in that forum." *Id.* (citing *Morris*, 834 F.3d at 989).

There is no real dispute that the parties here clearly and unambiguously agreed to arbitrate claims of the kind alleged in the Complaint. Simply put, severing the unenforceable class/collective action waiver from the rest of the Dollar General arbitration agreement and compelling the named Plaintiffs to proceed to arbitration does not run afoul of *Alternative Entertainment*.

For its part, Dollar General attempts to distinguish the arbitration agreement here with the arbitration agreement at issue in *Alternative Entertainment*. According to Defendants, the class/collective action waiver in *Alternative Entertainment* was a mandatory condition of employment. By contrast, Dollar General allowed its employees to opt out of arbitration

altogether.  The Dollar General agreement granted employees 30 days to consider the agreement and then expressly opt out of arbitration, assuring employees that a decision to opt out would have no impact on their employment with Dollar General.  Employees who did not expressly opt out and continued to be employed with Dollar General for a period of 30 days would be bound by the agreement.  It is true that the Sixth Circuit referred in several instances to the fact that employees in *Alternative Entertainment* had to accept arbitration and the class/collective action waiver as a compulsory condition of their employment.  *E.g. Alt. Entm't*, 858 F.3d at 405 ("*Mandatory* arbitration provisions that permit only individual arbitration of employment-related claims are illegal pursuant to the NLRA and unenforceable pursuant to the FAA's savings clause.") (emphasis added).  However, the Court ultimately finds Dollar General's attempt to distinguish *Alternative Entertainment* on its facts unconvincing.

The distinction in the two cases merely goes to the nature of the consent given by each set of employees.  According to Defendants, Plaintiffs and other Dollar General employees freely and voluntarily waived their right to pursue class or collective relief, while the employees in *Alternative Entertainment* never had such an opportunity.  Dollar General's point might carry more weight, for example, if the Sixth Circuit had held that the waiver in *Alternative Entertainment* was unconscionably adhesive and unenforceable.[4]  But the Sixth Circuit's conclusion was not that the employer in *Alternative Entertainment* had improperly extracted the class/collective action waiver from its employees or denied employees a meangingul opportunity

---

[4] To underscore this point, contracts of adhesion are not necessarily unenforceable, both under Tennessee law and Illinois law. *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 756 (Tenn. 2015) ("[C]ontracts of adhesion are not *per se* unenforceable in Tennessee."); *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 654 (Ill. 2011) (holding that not all contracts of adhesion "are so procedurally unconscionable as to be unenforceable").  The point is the Sixth Circuit concluded that class-collective actions are "illegal" because they contradict federal law, not because they are unconscionably adhesive.  *Alt. Entm't*, 858 F.3d at 405, 407.

to bargain for the waiver, the hallmarks of an unscionable contract of adhesion.  The waiver was unenforceable because it directly conflicted with a substantial right of employment under the NLRA.  The reasoning of *Alternative Entertainment* suggests that an employee's consent to such a waiver does not alter the fact that the waiver is inconsistent with the guarantees of the NLRA and therefore unenforceable under the FAA.  This is true regardless of how Dollar General obtained their employees' consent to waive their right to "concerted activity."

Dollar General has also cited for support recent decisions from the United States District Court for the Middle District of Tennessee, suggesting that *Alternative Entertainment* may not reach collective action waivers in FLSA cases.  *See Myers v. TRG Cust. Solutions, Inc*., No. 1:17-cv-00052, 2017 WL 3642295 (M.D. Tenn. Aug. 24, 2017); *Jane Doe # 1 v. Déjà vu Consulting Inc.*, No. 3:17-cv-00040, 2017 WL 3837730 (M.D. Tenn. Sept. 1, 2017).  The Middle District cited three reasons to support its reading of *Alternative Entertainment*: (1) that *Alternative Entertainment* applies only to "employees," as the NLRA defines the term; (2) that collective action under the FLSA is not "concerted activity" for purposes of the NLRA; and (3) that *Alternative Entertainment* applies only to claims brought under the NLRA.  The Court respectfully finds these reasons unpersuasive.

First, it is true that the NLRA definition of an "employee" includes only current employees.  Like the named Plaintiffs in this case, the plaintiff in *Myers* alleged FLSA claims on behalf of herself and other similarly situated employees. And like the named Plaintiffs here, the plaintiff in *Myers* was no longer employed by the defendant, and so the Middle District reasoned that *Alternative Entertainment* did not apply.  The Middle District's point about the significance of a plaintiff's employment status is true, as far as it goes.  "The NLRA's protections extend only to workers who qualify as 'employee[s]' under § 2(3) of the Act."  *Holly Farms Corp. v.*

16

*N.L.R.B.*, 517 U.S. 392, 397 (1996) (citing 29 U.S.C. § 152(3)).  It is common ground that the NLRA defines "employee" in such a way that former employees do not meet the statutory definition.  *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157, 172 (1971) (commenting in *dicta* that it "would utterly destroy the function of language to read [the NLRA's term "employee"] as embracing those whose work has ceased with no expectation of return").  But the issue presented in these cases is whether a class/collective action waiver executed by the named Plaintiffs is enforceable, not simply whether a former employee has rights under the NLRA.  It is beyond dispute that named Plaintiffs were "employees" of Dollar General for purposes of the NLRA when they signed the Dollar General arbitration agreement containing the waivers.  The fact that named Plaintiffs no longer meet the statutory definition of a Dollar General "employee" has little bearing then on the question of whether the waiver is enforceable as a matter of the FAA.

Moreover, focusing on a plaintiff's status at the time of filing suit, and not at the time she executed the arbitration agreement, would lead to perhaps inconsistent outcomes.  The arbitration agreement in this case applies both to claims during an employee's tenure with Dollar General and to claims related to an employee's termination.  The "Covered Claims" include "any legal claims or disputes [the employee] may have . . . arising out of your employment with Dollar General or the termination of your employment with Dollar General . . . ."  Arbitration Agr. 1.  The implication from the Middle District's discussion of the issue is that *Alternative Entertainment* would apply and a class/collective action waiver would be unenforceable under the FAA but only so as long as a plaintiff remained a current employee of the defendant.  Once an employee's tenure with the employer ended, though, *Alternative Entertainment* would no longer apply, and the same waiver would then be enforceable, because the employee no longer

met the NLRA's definition of an "employee."   The Court finds nothing in *Alternative Entertainment* to support such an approach to the question of enforceability under the FAA.

Second, the Middle District made two related points, the first concerning whether an FLSA collective action could be considered "concerted activity" under the NLRA and the other whether *Alternative Entertainment* was limited to claims brought under the NLRA.  The Sixth Circuit clearly based its decision on the substantive right to concerted action under the NLRA. As the Court of Appeals noted, "[t]he core right that § 7 of the NLRA protects is the right to engage in concerted activities for the purpose of collective bargaining or mutual aid or protection" including "resort to administrative and judicial forums."  *Alt. Entm't*, 858 F.3d at 402 (citing 29 U.S.C. § 157 and *Eastex, Inc. v. N.L.R.B.*, 437 U.S. 556, 565-68 (1978)). Perhaps not surprisingly then, the class/collective action waiver in the Dollar General agreement specifically excluded from its scope any claim under the NLRA.  However, nothing in the Sixth Circuit's opinion limited the reach of the ruling only to cases asserting rights under the NLRA.

The Sixth Circuit in framing the issue and in announcing its holding referred to the unenforceability of waivers of "employment-related claims" generally, and not just waivers of collective bargaining under the NLRA.  *Id.* at 401 ("Whether federal law permits employers to require individual arbitration of employees' *employment-related claims* is a question of first impression in this circuit."); at 405 ("Therefore, we disagree with the Fifth Circuit's holding that employers may require employees to agree to a mandatory arbitration provision requiring individual arbitration of *employment-related claims*. Mandatory arbitration provisions that permit only individual arbitration of *employment-related claims* are illegal pursuant to the NLRA and unenforceable pursuant to the FAA's saving clause."); and at 408 ("[A]n arbitration provision requiring employees covered by the NLRA individually to arbitrate *all employment-related*

*claims* is not enforceable.") (emphasis added).   On its own terms, *Alternative Entertainment* reaches all "employment-related claims" and is not limited to specific claims under the NLRA.

Finally, the Middle District noted some inconsistency in *Alternative Entertainment* and in the Sixth Circuit's earlier holding in *Huffman v. Hilltop Cos.*, 747 F.3d 391 (6th Cir. 2014).   The Middle District correctly read *Huffman* to hold that "when an arbitration clause does not authorize classwide arbitration, the plaintiffs must proceed individually." *Myers*, 2017 WL 3642295, at *3 (quoting *Huffman*, 747 F.3d at 398-99) (internal quotation marks and ellipsis omitted).   The Middle District observed that "the Sixth Circuit [in *Alternative Entertainment*] did not reference *Huffman* or remotely imply that its holding had any bearing on *Huffman* or other cases arising in the employment context generally upholding arbitration provisions requiring individual rather than collective arbitration." *Id.* at *5.   The panel in *Huffman* was never called upon to answer the question presented in *Alternative Entertainment* concerning the enforceability of a class/collective action waiver.   In fact, there is no indication from *Huffman* that there was a class/collective action waiver in the arbitration agreement in that case, making *Huffman* distinguishable on its facts.   What is more, *Huffman* never reached the question of whether such waivers violated the right to concerted action under the NLRA and whether employees retained a substantive right to pursue concerted action, in either an arbitral or judicial forum.   While there may be some tension between the two decisions, *Alternative Entertainment* simply addresses an issue that was never presented in *Huffman*.   As a result, the Court finds it unnecessary to decide whether *Alternative Entertainment* overruled *Huffman* or whether *Huffman* could somehow apply under the facts of this case.

Having determined that the parties agreed to arbitrate, that the named Plaintiffs' claims fall within the scope of the arbitration agreement, and that the class/collective action waiver in

the agreement is unenforceable, the Court orders the parties to arbitration and allows named Plaintiffs to pursue their FLSA collectively and their state law claims as a class.

The only issue remaining is whether the Court should dismiss the Complaint, including the non-arbitrable claims raised by Plaintiff Brandi Hubbard and the opt-in Plaintiffs who did not consent to arbitration.  The FAA requires a court to stay proceedings pending arbitration only "on application of one of the parties." 9 U.S.C. § 3.  The Sixth Circuit has found that even "[v]ague references to a stay do not constitute a request for a stay." *Hilton v. Midland Funding, LLC*, 687 F. App'x 515, 519 (6th Cir. 2017) (citing *Knall Beverage, Inc. v. Teamsters Local Union No. 293 Pension Plan*, 744 F.3d 419, 424 (6th Cir. 2014)).  In the recent case of *Hilton v. Midland Funding, LLC*, the Court of Appeals held that a district court's decision to compel arbitration and dismiss the case without prejudice was not error.  *Id.*  The parties invoking arbitration requested dismissal of the suit without prejudice, and none of the parties specifically requested a stay of the action.  *Id.*  Similarly, Dollar General has requested that the Court compel Beaver, Huffman, and Jimenez to arbitration and dismiss the case.  Plaintiffs have not expressly requested a stay of the proceedings.  Under the circumstances, the Court will dismiss the case without prejudice to re-file the non-arbitrable claims.

## CONCLUSION

Defendants' Motion to Compel Arbitration is granted on the issue of whether named Plaintiffs Beaver, Huffman, and Jimenez are bound to arbitrate their claims.  However, the Court holds that the class/collective action waiver found in the Dollar General arbitration agreement is unenforceable pursuant to the FAA.  The unenforceable waiver is severable from the rest of the arbitration agreement, and so the Court will compel Plaintiffs to arbitrate their claims but will allow them to do so collectively and as a class.  Defendants' Motion to Compel Arbitration is

20

denied as to the claims of Brandi Hubbard and any other opt-in Plaintiff who did not sign the arbitration agreement.  The Court hereby dismisses the non-arbitrable claims without prejudice. Defendants' Motion is **GRANTED in part, DENIED in part**.

      **IT IS SO ORDERED.**

                     **s/ S. Thomas Anderson**
                     S. THOMAS ANDERSON
                     CHIEF UNITED STATES DISTRICT JUDGE

                     Date:  September 28, 2017.